UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KRYSTAL CAMPBELL, aka, JANE DOE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:10-CV-325-B | |
| § | | |
| ARTHUR BRENDER, et al., § | | |
| § | | |
| Defendants. § | | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

This is a purported civil rights–racketeering action against two federal judges, the Clerk of Court for this District, three attorneys, a law firm, and two computer technology firms. Plaintiff "Jane Doe"[2] maintains that these defendants variously conspired to falsify official court records, hack into several of her computers, destroy evidence, and burglarize and steal files from her apartment. Recognizing the fanciful nature of Plaintiff's allegations and mindful that she had a history of "bad faith" dealings with other federal courts, the Court convened an evidentiary hearing on October 20, 2010. The purpose of the hearing was to determine whether Plaintiff's allegations were of the same "fanciful" and "delusional" nature as had been described by other federal courts reviewing Plaintiff's claims in related cases. Having now given Plaintiff an opportunity to explain the basis for this suit, the Court has come to the undeniable conclusion that her claims are entirely baseless and brought

---

[1] This amended order corrects some typographical errors in the original order. There are no substantive differences between the two orders.

[2] Plaintiff has not sought or received permission to proceed under this pseudonym. Consequently, she will hereinafter be referred to by her name, "Krystal Campbell."

in bad faith.  Finding no lesser sanction appropriate in the face of her patently false claims, the Court finds that Plaintiff's case should be and hereby is **DISMISSED with prejudice**.

Plaintiff's claims in this suit arise out of events surrounding an employment discrimination suit she filed in this District against her former employer, American Airlines ("American").  *Doe v. American Airlines*, No. 3:03-CV-745.  In that suit, Plaintiff, appearing *pro se,* claimed that American violated the Americans with Disabilities Act by failing to accommodate her disability ("difficulty with walking"), fostering a hostile work environment, and retaliating against her.  Complaint at 1-2, *Doe v. American Airlines*, No. 3:03-CV-745 (N.D. Tex. Apr. 11, 2003) (doc. 1).  She was eventually appointed counsel by Magistrate Judge Stickney who enlisted a highly experienced civil rights attorney, Mr. Art Brender, to represent Plaintiff *pro bono* in the suit.  Order of Dismissal at 1, *Doe v. American Airlines*, No. 3:03-CV-745 (N.D. Tex. Dec. 28, 2006) (doc. 60).  In a bizarre turn of events, documented by the District Court's order dismissing the case, Plaintiff stubbornly refused to allow American to obtain the medical records documenting her supposed medical impairment, claiming her "right to privacy." *Id.*  This, despite repeated requests by American and an eventual court order directing her to do so. *Id.* at 2-4.  She objected to the court's order to authorize release of the records with the following diatribe:

> Handing over documents and letting opposing counsel discuss them in deposition will kill privacy and give American Airlines the blackmail leverage it needs to coerce me into signing their precious "confidentiality agreement," so I would like the courts to give me every opportunity to keep private and potentially embarrassing information from entering the public domain via a deposition.  Finally, the relationship between doctor and patient is privileged and protected.  That order required me to turn over items that are exempted under the FRCP 26(B) was a judicial error, and an abuse of discretion.

Pl.'s Notice of Appeal/Objection 4, *Doe v. American Airlines*, No. 3:03-CV-745 (N.D. Tex. Dec. 22, 2009) (doc. 59). Confusingly, in another attempt to avoid discovery of her medical records, she told Brender that she had gotten medical treatment under assumed names that she had forgotten, thus that record-finding would be extremely difficult. (Hr'g Tr. 57:17-58:18, Oct. 20, 2010). Plaintiff eventually turned on Brender, accusing him of dilatory conduct and referring to him and his coworkers as "idiots." Order of Dismissal at 1-2, *Doe v. American Airlines*, No. 3:03-CV-745 (doc. 60). After Brender was permitted to withdraw, the District Court documented that Plaintiff "repeatedly failed to cooperate with Defendant's counsel with respect to her discovery obligations," despite "repeated warnings" from Judges Stickney and Lindsay. *Id.* at 2-4. Judge Lindsay ultimately found that "Plaintiff's pattern of intentional delay, noncompliance with the magistrate judge's and the court's orders and the Federal Rules of Civil Procedure, and refusal to cooperate in the discovery process has prevented [American] from obtaining essential evidence to evaluate and defend against her claims." *Id.* at 4. The Court further noted, "Plaintiff's actions amply evidence bad faith and a pattern of delay and contumacious conduct which have prevented the Defendant's timely and appropriate preparation for trial. . . . [T]he court has been quite patient in dealing with the Plaintiff's combative, dilatory and uncooperative conduct; however, the court has grown weary of such conduct, and nothing in the record indicates that any sanction less than dismissal with prejudice would be an effective deterrent to Plaintiff's conduct." *Id.* at 5. The Court entered a Judgment dismissing Plaintiff's claims with prejudice on December 28, 2006. Plaintiff's subsequent appeals were rejected by the Fifth Circuit.

Now, in an apparent attempt to avenge the dismissal of her ill-founded employment case, Plaintiff sues several of the individuals connected to that case.[3] As mentioned, these include the federal judge and magistrate judge who presided over that case as well as the attorney appointed to represent Plaintiff, attorneys for American Airlines, and the U.S. District Clerk for the Northern District of Texas. Plaintiff also names as defendants in this case two technology companies that she maintains conspired with the other defendants to hack into her home computer and certain public library computers she attempted to access in connection with her employment case. In essence, Plaintiff claims that these defendants conspired to defeat her employment suit by falsifying court records, burglarizing her home to steal files, hacking into multiple computers, committing mail fraud, obstructing justice, and engaging in racketeering. On their face, Plaintiff's allegations are precisely the sort of fanciful, delusional claims that merit dismissal. Her history only reinforces this conclusion. The Court cites the following statements as indicative, but by no means exhaustive, evidence of the frivolous nature of this suit:

- Defendants "'fast tracked' her case to dismissal, based in part on their scheme to falsely claim her to be guilty of 'contumacious conduct' when she refused to agree to what appeared to Plaintiff as utterly unwarranted discovery requests." (Pl.'s First Am. Compl. 4 (doc. 7)).

- "Defendants colluded with Karen Mitchell and Judge Lindsay to commit one or more of the following criminal acts . . . they falsified the docket of Plaintiff's suit to conceal one order issued by Defendant Stickney and one by Defendant Lindsay, falisified the district court record by removing from it the two orders (and other critical documents) proving attorney

---

[3]Plaintiff first filed the instant action in the District of Nevada. *Doe v. Mitchell*, No. 2:09-cv-016-RCJ-GWF. That Court dismissed Plaintiff's claims without prejudice on the grounds that the District of Nevada was an improper venue and that Plaintiff's claims against Judge Lindsay, Judge Stickney, and Ms. Mitchell were based upon "meritless" legal theories. Order at 5-8, *Doe v. Mitchell*, No. 2:09-cv-016-RCJ-GWF (D. Nev. Feb. 3, 2009) (doc. 7). Plaintiff then refiled her claims in the Northern District of Texas on February 11, 2010. (*See generally* Pl.'s Original Compl. (doc. 1)). Plaintiff later amended her complaint to include several technology corporations as defendants. (*See generally* Pl.'s First Am. Compl. (doc. 7)).

fraud resulted in the *ex parte* grant of American's motion to compel, instigated the burglary of Plaintiff's home to steal her copies of the incriminating documents which had been improperly excised/erased from the record, then forwarded the falsified 'record' via U.S. Mail to the Fifth Circuit." (*Id.*).

• "Defendant Lindsay sanctioned Plaintiff, to conceal his own wrong-doing, the wrongdoing of his co-conspirators, and to chill her right to appeal." (*Id.*).

• Plaintiff's copies of the missing docket sheet items "mysteriously disappeared" in a burglary of her home, a burglary in which the only items allegedly taken out of Plaintiff's residence was her case file. (*Id.* at 7 n. 4; Hr'g Tr. 94:22-96:5).

• "Defendant Haynes & Boone, its ASN peers and its 'rogue blacklisted' associates such as Oliver Van Louven, have repeatedly hacked into [Plaintiff]'s computer, once deleting emails from Art Brender to [Plaintiff]." (Pl.'s First Am. Compl. 9).

• "Defendants destroyed Plaintiff's home computer and are currently preventing her from accessing legal research on the internet." (Pl.'s First Am. Compl. 11) During the hearing, Plaintiff detailed how Defendants even monitor and limit her internet usage at public libraries in Dallas and Las Vegas. (Hr'g Tr. 98:23-101:5).

• "Whenever I am on the cusp of a [filing] deadline the hacker tries to prevent my submission of documents. Yes, it would be a real bonus for the party behind this to have the ability to obstruct the performance of an opponent, forcing him to turn in four hastily written pages, instead of 26 well-written pages . . . . [T]his is an unfair advantage and unsportsman like conduct unbefitting an officer of the court and some Federal Judge should do something about it. HINT HINT." (Pl.'s Ans./Aff. Defs.' Obj. Late-filed Resp. And Reply in Support of Mot. Dismiss 2-3 (doc. 23)).

• "Please make Verisign or whomever is abusing my home computer to stay out. I need to work at home or I am severely prejudiced in this lawsuit. I need the court to order Verisign/Haynes & Boone to restore the ability of my computer to store, print and use my legal software, all of which has been made non-functioning. It is not paranoia if it is true." (*Id.* at 4).

• "Every time there's an error and I go to the tech person at the library, I have been recorded as watching pornography when I am pulling things up on Haynes & Boone." (Hr'g Tr. 19:21-24).

• "[T]here is someone making Articles about Haynes & Boone disappear. So my question is, who profits? Who profits by suppressing articles about Haynes & Boone hacking into people's computers." (*Id.* at 24:18-22).

•"How do I know they did what they say they did? It is very difficult without them producing the evidence and several of the parties have been relieved of their obligation to make statements." (*Id.* at 36:3-7).

•"[T]he only possible explanation [for Judge Stickney entering findings on November 8] was that somebody approached that judge because I do not believe that Mr. Stickney just suddenly decided like a wild goose to say, hum, let me just do wrong to a plaintiff today who is on the docket. Somebody approached him improperly on the 8th and got him to sign the order a day early when they knew it was a contested order." (*Id.* at 37:24-38:9).

•Responding to a question about whether Plaintiff had any evidence that Defendants were involved in the burglary of her mother's home, Plaintiff said that she had "[n]o direct evidence . . . [j]ust who else would be benefitting by the removal of my files." (*Id.* at 96:4-5).

•"I believe Level 3 Communications responds back to Haynes & Boone when I am in the library and Haynes & Boone logs on. That is my theory, my working theory, because of what was happening." (*Id.* at 100:19-22).

While the Court gave Plaintiff a full opportunity at the evidentiary hearing to articulate a scintilla of support for these outlandish accusations, she only added more far-fetched fodder to the mix with her testimony. Her factual support for the accusations boiled down to her "reality-challenged" personal opinion that there was no *other* reason for the occurrences. Observing her demeanor during the hearing, she appeared to be "making it up as she went along."

"District Courts have the inherent authority to dismiss a *pro se* litigant's frivolous or malicious complaint *sua sponte* even when the plaintiff has paid the requiring filing fee. *Fitzgerald v. First East Seventh Street Tenants*, 221 F.3d 362, 363-64 (2d Cir. 2000); *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995); *Holman v. Wooten*, No. 4:09-1634-CWH, 2010 WL 691263, at *2 (D.S.C. Feb. 24, 2010); *Larrimore v. Bank of New York Mellon*, No. 4:09-1647-TLW-TER, 2009 WL 4920776, at *2 (S.D.N.Y. Dec. 11, 2009); *McCracken v. Natale*, No. 04 Civ. 5456, 2008 WL 5274317 (E.D.N.Y. Dec. 17, 2008). The Supreme Court, while never having directly ruled on the matter, has also stated

(albeit in dicta) that federal courts have the inherent power to dismiss frivolous lawsuits. *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) ("Statutory provisions may simply codify existing rights or powers. Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

In determining whether a plaintiff's complaint is frivolous, district courts must determine whether the facts alleged are "clearly baseless," meaning that the allegations are "fanciful," "fantastic," or "delusional." *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (stating the standard for determining frivolity under Section 1915(d)). The Court has considerable discretion in determining whether a claim is factually frivolous. *See id.* Nonetheless, because the Plaintiff is a *pro se* litigant, the Court has liberally construed her pleadings and provided her an opportunity to explain her allegations by convening the aforementioned hearing. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The malicious and frivolous accusations leveled against Defendants in this case are factually baseless. Moreover, based on Plaintiff's conduct in the employment suit against American Airlines, it appears the case itself was filed for the improper purpose of harassing Defendants over her loss in that case. Adding insult to injury, at least one of the defendants—Art Brender—encountered Plaintiff and consequently placed himself in her line of fire only because he agreed to help her by representing her *pro bono*. Not only did Plaintiff make false claims against Defendants in this case, it is obvious from Defendants' filings that they incurred considerable cost and expense in defending themselves.

Relying on its inherent power to sanction bad faith conduct and to prevent the expense of litigating frivolous claims, the Court therefore **DISMISSES with prejudice** all of Plaintiff's claims. The Court expressly finds that based on the frivolous and malicious nature of Plaintiff's conduct in this case coupled with her conduct documented by Judge Lindsay in the prior case, no lesser sanction would be appropriate to achieve the purposes behind the Court's sanctioning authority. The Court also finds that Defendants are entitled to their reasonable attorney's fees in defending this bad faith suit. Accordingly, it is ordered that Plaintiff pay to Defendants the fees incurred by their attorneys in defending the present claims, an amount to be determined and ordered at a later time. Furthermore, due to Plaintiff's history of filing baseless claims,[4] the Court further orders that before Plaintiff may file another case in the Northern District of Texas, she must first present evidence that she has satisfied her obligation of paying at least a portion of Defendants' attorney's fees—the amount to be determined in an order to follow.

SO ORDERED.

OCTOBER 25, 2010.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[4] In addition to Plaintiff's dismissed employment suit against American Airlines, the dismissed suit in Nevada, and the instant action, Plaintiff also admitted, under questioning by defendants' counsel at the hearing, to filing two other suits that might also be categorized as frivolous. First, Plaintiff brought suit against Southern Methodist University, a case in which she refused to produce medical records, had bitter disagreements with one if not two sets of attorneys, and was ultimately dismissed for want of prosecution. (Hr'g Tr. 80:15-83:13). She also admitted to filing suit in the Northern District of Texas against the Dallas County Civil Courts, a case which was quickly dismissed *sua sponte* for lack of jurisdiction. (Hr'g Tr. 83:21-85:21, referring to *Krystal Campbell v. Dallas County Civil Courts*, No. 3:00-CV-1648-X).